**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**JULIE P ENTREKIN**                                                            **PLAINTIFF**

**V.**                              **CIVIL ACTION NO. 2:15CV153 LRA**

**NANCY BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY[1]**       **DEFENDANT**

**MEMORANDUM OPINION**

Julie Entrekin appeals the final decision denying her applications for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the Court finds the final administrative decision should be affirmed.

In March 2011, Plaintiff filed applications for SSI and DIB alleging a disability onset date of January 15, 2011, due to bulging discs from L3 to S1 and degenerative disc disease. She was 43 years old at the time of the ALJ's decision. She has an associate degree with past work experience as a registered nurse.

Following agency denials of her applications, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that she had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's

---

[1] Nancy Berryhill is substituted for her predecessor, Carolyn W. Colvin, as Acting Commissioner of Social Security. Fed. R. Civ. P. 25(d).

request for review. She now appeals that decision.

At step one of the five-step sequential evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At steps two and three, the ALJ found that although Plaintiff's disorders of the lumbar spine, affective disorder, and an anxiety disorder were severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work except that:

> the claimant cannot be exposed to unprotected heights or hazardous machinery. She can occasionally crouch, crawl, stoop, kneel, balance, and climb stairs. She cannot climb ladders, ropes, or scaffolds. The claimant is restricted to simple, well-defined tasks with simple instructions and simple decisions. She can interact only occasionally with the general public. She cannot deal with people as customers. She can work around others; however, she cannot supervise the work of others and the work should not require frequent communication with coworkers or supervisors. She can adjust to a work routine provided the work is not highly exacting, complex, or dangerous. She can adjust to a gradual change in work routine. She cannot drive commercially.[3]

Based on vocational expert testimony, the ALJ concluded at step five, that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform work as a mail clerk, bench assembler, and press machine operator.

---

[2] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[3] ECF No. 6, p. 23.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff's sole issue on appeal is whether the ALJ committed reversible error in violation of social security rulings and regulations by mischaracterizing and failing to fully evaluate her pain management physician's opinion.

Plaintiff testified that she suffers from several impairments, including a ruptured disc, broken coccyx, degenerative disc disease, leg pain, anxiety and depression, posttraumatic stress disorder, panic attacks, and debilitating migraine headaches. She experiences constant unremitting pain all over as a result, and in her lower body "every second of every day." Although pain medication helps, the side effects cause sleepiness,

3

grogginess, stomach and memory problems.  Performing any physical activity, i.e., standing, walking, sitting, or driving, for any length of time is difficult and exacerbated by postural activities.  In addition to her pain, she is consumed by anxiety and depression, which she attributes to the death of several family members and friends.  She takes antidepressants, but stopped going to mental health counseling because it was too difficult.  Her pain and psychological symptoms limit her daily activities and affect her ability to concentrate.  She finds it hard to get up, bathe, dress, and eat because of depression, and testified that she feels like a vegetable.  Though she drives and cares for her pet and youngest child after school, she is unable to do most household chores.  On appeal, she charges that the ALJ's failure to assign controlling weight to the medical opinions of her pain-management specialist was reversible error, and requests that this case be remanded for further evaluation of her cervical issues.[4]

Generally, the opinion and diagnosis of a treating physician should be given considerable weight in determining disability.  But the treating physician's rule is "not an ironclad rule." *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015). "[S]uch opinions can be disregarded if they are 'brief and conclusory, not supported by medically acceptable clinical diagnostic techniques, or otherwise unsupported by the evidence.'" *Id.* (quoting *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005)).

---

[4]ECF No. 6, pp. 109-31.

The Fifth Circuit has long held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel,* 209 F.3d. 448, 453 (5th Cir. 2000) (emphasis in original).  The statutory analysis requires the ALJ to consider the length of treatment; the frequency of examination; the nature and extent of the treatment relationship; the extent to which his opinions were supported by the medical record; the consistency of his opinion with the record as a whole; and the specialization of the physician. *Id*. at 456.  The ALJ is not required, however, to consider each of the these factors when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Walker v. Barnhart*, 158 F.App'x 534, 535 (5th Cir. 2005).  The ALJ is responsible for resolving conflicts in the evidence.  As such, an ALJ's decision supported by substantial, contradictory, first-hand evidence from another physician does not require the detailed analysis set forth in 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ engaged in a detailed and comprehensive analysis of the evidence in compliance with *Newton*.  He found that Plaintiff's pain management physician, Dr. Michael Rowland, diagnosed Plaintiff with degenerative disc disease of the lumbar spine, headaches, anxiety, depression, hypertension, and sleep disturbance.  He noted that medical records documented that Dr. Rowland conservatively treated Plaintiff for her

5

various ailments from December 2012 through April 2013. Medications were shown to be effective, consistently reducing Plaintiff's pain without any side effects, with Plaintiff reporting on one occasion that her medications "make her feel normal." Examination findings also regularly revealed that Plaintiff had full strength and range of motion in her extremities, and "full range of motion in her spine with some mild paraspinal tenderness (at various levels of her spine)." But as observed by the ALJ, over the course of Dr. Rowland's treatment, Plaintiff "reported few new symptoms, studies, or decline in her functioning/quality of life; however, those that were reported did not correlate with significant changes in her examination findings." Although she ambulated with a cane due to "extreme stress" during an examination in December 2011, it was not medically necessary. The ALJ also considered medical records revealing that Plaintiff reported increased anxiety and depression to Dr. Rowland in May, June, and October 2011. He noted that she was treated with antidepressants, but failed to seek mental health counseling. In addition to the lack of formal mental health treatment, a substance dependency evaluation conducted following a positive drug screen in March 2012 revealed a low probability for a substance dependency disorder, but it was recommended that Plaintiff's drug screens be closely monitored or increased, and that she undergo substance abuse education before returning to Dr. Rowland.[5]

---

[5] ECF No. 6, pp. 393-440, 462-76, 492-96.

In May 2012, Dr. Rowland completed a pain questionnaire indicating that while degenerative disc disease of the lumbar spine caused Plaintiff pain, her range of motion remained normal. He noted that objective testing showed minor neural foramen narrowing, but there was "no clearly seen nerve root involvement." Dr. Rowland found no evidence of limitation of motion in the spine, motor loss, positive straight-leg raising, spinal arachnoiditis, or lumbar spine resulting in pseudoclaudication. Plaintiff could also ambulate effectively and perform fine and gross movements. In Dr. Rowland's opinion, Plaintiff's impairments would not prevent her from working full-time, "if she had a job where she could sit at a desk and get up as needed to stretch." While on some days, bed rest and/or medication would be necessary for Plaintiff to perform physical activities such as walking, standing, bending, stooping, and moving extremities, on other days, these activities would not increase her pain to the extent that she would be prevented from adequately functioning. When asked to what extent pain would be significant in Plaintiff's treatment, Dr. Rowland reiterated that on some days, Plaintiff's pain would be such a distraction that it would preclude adequate performance. But in his opinion, while Plaintiff's "pain may prevent her from being a hospital floor nurse, [he could not] say that her pain would prevent her from a sedentary or desk job such as teaching or Q & A jobs."[6]

---

[6]ECF No. 6, pp. 477-78.

In evaluating the evidence, the ALJ concluded that Dr. Rowland's opinion was entitled to little weight because the limitations reported were excessive compared to the objective medical evidence, including his own treatment notes. The ALJ explained:

> I considered the opinion of Dr. Rowland, a treating source of the claimant. The claimant's pain was reportedly severe enough to impair her functioning on some days but not on others. He opined that she would not be able to perform her prior work as an RN but declined to say that she could not perform sedentary work. To the extent that Dr. Rowland ventures into a vocational opinion, I did not give weight to his opinion, as it is not clear that the physician is aware of what the claimant's past work entails or what is required for the performance of sedentary work. I give credence to his opinion that the claimant's pain impairs focus from time to time, but I did not give significant weight to his opinion that on some days the claimant's pain would be such that she cannot function vocationally. The treating source specifically notes the lack of medical signs, which would typically be seen in disabling restrictions, reporting that she has no limitation of motion, motor loss, atrophy, stenosis, or positive straight leg raising tests. The treating source also stated that he believed she could work full time if given the opportunity to move about and stretch. No other examining or treating source opined restrictions such as this. For this reason, while I give deference to his opinion that her pain restricts her focus, I did not find his opinion that her pain would restrict her to sedentary work to be adequately supported. Therefore, it was given little weight when making the findings herein. [7]

Plaintiff objects to the ALJ's conclusions, but does not rebut his well-reasoned analysis or good cause with substantial evidence to the contrary. She does not demonstrate that the ALJ failed to comply with *Newton* directives or social security rulings and regulations, nor does she explain how the ALJ analysis mischaracterizes Dr. Rowland's opinion. She broadly asserts, rather, that the ALJ failed to give sufficient deference to Dr. Rowland's

---

[7]ECF No. 6, p. 34.

assessment that her pain would be so severe on some days that it would distract from her performance of her daily activities or work.

The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ and will not be disturbed when it is supported by substantial evidence. 20 C.F.R. § 404.1546 (c) (2010).  Substantial evidence supports the ALJ's findings here.

No medically acceptable clinical or laboratory diagnostic techniques established the existence of impairments which could be reasonably expected to produce the severity of pain or limitations to the degree that Plaintiff alleged.  No examining or treating physician documented examination findings establishing that Plaintiff's impairments impact her ability to perform work-related activities beyond the limitations indicated in the ALJ's residual functional capacity assessment.  *See Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (distinguishing between diagnosed impairments and functional limitations caused by those impairments).  A consultative physical examination of Plaintiff revealed findings consistent with those of Dr. Rowland.  While she was noted to have difficulty heel-toe walking and squatting, she had a normal gait, full range of motion in the spine, negative straight leg raises, no spasm or atrophy, and a normal grip. Moreover, Dr. Rowland's assessment did not corroborate Plaintiff's testimony that constant unremitting pain prevents her from functioning.  On the contrary, Dr. Rowland opined that Plaintiff could work notwithstanding her impairments and pain.  Additionally, despite her testimony that her medication causes "significant drowsiness, grogginess, memory loss, and stomach upset," she did not report side effects to Dr. Rowland or any

other treating source. As observed by the ALJ: "[O]ne would expect for there to be some mention of these serious side effects documented in the medical evidence of record if the claimant were actually experiencing them as described during the hearing."[8]

Despite allegations of disabling anxiety and depression, Plaintiff does not challenge the ALJ's finding that her consultative psychological examination revealed no significant abnormalities. Nor does she argue that the ALJ's residual functional capacity assessment fails to adequately incorporate her moderate difficulties in social functioning or concentration, persistence, or pace. By her own admission, she discontinued therapy because it proved too difficult. An ALJ may consider a claimant's failure to seek treatment for depression as an indication of non-disability. *Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005).

Whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ has the discretion to make a finding on the credibility of the statements, and the determination is entitled to considerable deference. *Foster v. Astrue*, 277 F. App'x 462 (5th Cir. 2008). In the formulation of Plaintiff's residual functional capacity here, the ALJ gave a clearly articulated and a particularly well-reasoned analysis of Plaintiff's symptoms, including pain, and the extent to which these symptoms were consistent with the objective medical evidence. The ALJ explained:

---

[8]ECF No. 6, p. 33, 362-66.

      In the end, I find the claimant is partially credible.  I have noted factors that support the claimant's allegations and I have identified inconsistencies that diminish the credibility of her statements.  The claimant is thus not fully credible such that I can accept her statements at face value; rather, her statements and allegations are credible to the extent that I have given them significant weight evaluating her residual functional capacity.  The exertional restrictions in the residual functional capacity are due at least in part to the claimant's credible allegations. I credit her testimony that postural activities exacerbate her pain when including appropriate restriction of these activities in the residual functional capacity above.  I credit her testimony as to medication side effects, which inhibit alertness, as well as her medically documented complaints of syncope, when restricting her driving as well as her exposure to unprotected heights or hazardous machinery.  Additionally, I credit her testimony and other evidence of record when finding that her focus is limited by her mental symptoms and medication side effects, justifying a restriction to simple well-defined work tasks with simple instructions and simple work decisions as well as the restriction against highly exacting, complex, or dangerous work activity.  I give credence to claimant's allegation that she has difficulty interacting with others.  The residual functional capacity therefore restricts her interaction with the general public and from dealing with people as customers.  The evidence suggests the claimant can interact with coworkers and supervisors without distracting them or being distracted; however, I considered the fact that stressful situations may exacerbate her anxiety.  When including the following restrictions in the residual functional capacity, I considered situations that may be a source of additional stress for the claimant:  restricting her from the performance of highly exacting, complex, or dangerous work activity; dealing with people as customers; with supervising the work of others or coworkers; from dealing with abrupt changes in work routine; and from making complex work decisions.[9]

It is clear that the ALJ gave due consideration to Plaintiff's subjective complaints of pain and properly evaluated Dr. Rowland's opinion in compliance with social security rulings and regulations.

    As a matter of law, the mere fact that working may cause a claimant pain or

---

[9]ECF No. 6, p. 33-34.

discomfort does not mandate a finding of disability. For pain to rise to the level of disabling, that pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). A medical condition that can be reasonably remedied by surgery, treatment or medication is not disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *see also Muckelroy v. Astrue*, 277 F. App'x 510, 511-12 (5th Cir. 2008) (rejecting Plaintiff's contention that he is disabled "because he needs medication to work"). "[I]ndividuals capable of performing even light or sedentary work, despite back trouble, are not disabled under the Act." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (citations omitted).

Based upon consideration of the evidentiary record as a whole, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to be disabling. The Court's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.

## Conclusion

IT IS THEREFORE ORDERED AND ADJUDGED that Defendant's Motion to Affirm the Commissioner's Decision is hereby granted, and Plaintiff's appeal is dismissed with prejudice. A Final Judgment in favor of the Commissioner shall be entered.

SO ORDERED, this the 20th day of March 2017.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE